TAMMY FORET FREEMAN ET AL        CIVIL ACTION

VERSUS        NO: 08-1626 c/w
08-1627; 08-4744

QUICKEN LOANS, INC. ET AL        SECTION: J(5)

## ORDER AND REASONS

Before the Court are Defendant Quicken Loans, Inc.'s ("Quicken") and Title Source, Inc.'s ("Title Source")[1] **Motions for Summary Judgment (Rec. Docs. 29 & 31),** which seek dismissal of the claims of Plaintiffs Paul Smith and Irma Smith ("the Smiths"); Tammy Foret and Larry Scott Freeman ("the Freemans"); and John J. and Stacey B. Bennett ("the Bennetts"), as well as the putative class of persons in Louisiana similarly situated to the Bennetts (collectively "the Plaintiffs"). The Plaintiffs have asserted claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., and Louisiana law arising out of mortgage and loan transactions executed in 2007.

---

[1] Title Source also does business under the name TSI Appraisal Services, and the TSI Appraisal Services d/b/a designation appears in some of the HUD-1 Settlement Statements referenced in the parties' briefing. The HUD-1 Settlement Statement is intended to give borrowers a statement of actual settlement costs in connection with their federally related mortgage loans. See HUD RESPA Settlement Costs and Helpful Information, June, 1997 *available at* http://www.hud.gov/offices/hsg/ramh/res/sc3sectd.cfm. The HUD-1 Settlement Statement is required to "conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement" of a federally related mortgage loan. See 12 U.S.C. §2603(a).

Specifically, the Plaintiffs' claims relate to various loan discount and/or origination fees, loan processing fees, and appraisal fees charged in connection with the mortgage loans.

These motions were originally set with oral argument for April 1, 2009, but oral argument was cancelled due to a conflict with the Court's trial docket. After review of the record, the memoranda of counsel, and the applicable law, the Court finds that these motions should be granted, and the Plaintiff's claims should be dismissed for failure to state a claim, for the reasons that follow.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

The Freemans originally filed suit in the 32nd Judicial District Court for the Parish of Terrebonne ("32nd JDC") on February 19, 2008 against Quicken and Title Source, alleging that both entities charged unearned and/or nominal or duplicative fees in violation of RESPA in connection with the Freemans' mortgage loan closing. In particular, the Freemans alleged that Quicken charged a loan discount fee with no concomitant interest rate reduction.[2] In addition, the Freemans allege that Title Source charged an appraisal fee[3] that was either split with Quicken,

_____

[2] Specifically, the Freemans were charged a one point loan discount fee of $980, which fee was listed on line 802 of the Freemans HUD-1 Settlement Statement.

[3] Specifically, the Freemans were charged $300 for an appraisal of their residence by a local real estate appraiser, as well as an additional $80 fee with only a reference to "TSI

2

unearned and/or duplicative, and/or was excessive in relation to the services rendered, all in violation of RESPA. Finally, the Freemans allege that these unearned/split/excessive fees constituted breaches of the mortgage and note agreements entered between Quicken and the Freemans, and seek damages for the breaches under Louisiana law. Finally, and in the alternative, the Freemans allege that they are entitled to recoupment of the fees under a theory of "payment of a thing not owed" or unjust enrichment as a matter of Louisiana law. Quicken and Title Source removed the Freemans' suit to this Court on April 11, 2008 based on federal question jurisdiction in light of the RESPA claims.

The Smiths filed a virtually identical complaint in the 32nd JDC, alleging RESPA violations against Quicken and Title Source in connection with loan and appraisal fees in the context of mortgage loans. The slight difference between the Smiths' complaint and the Freemans' complaint is that the Smiths allege RESPA violations in connection with loan *origination* and loan *processing* fees (as opposed to loan *discount* fees as alleged in the Freemans' complaint).[4] However, the Smiths allege the same

_____

Appraisal Services" on the HUD-1 Settlement Statement.

[4] Specifically, the Smiths were charged $5,107.44 (or 2.875% of their total loan amount of $177,650.00), apparently as a loan origination fee, as well as a $575.00 loan processing fee. However, as pointed out by Quicken and Title Source, despite the fact that the $5,107.44 was listed as a loan *origination* fee on

basis for relief under RESPA with respect to the appraisal fee charged by Title Source.[5]  Likewise, the Smiths allege the same Louisiana law theories of breach of contract, payment of a thing not owed, and unjust enrichment as alleged in the Freeman complaint.  The Smiths' complaint was also removed to this Court on April 11, 2008 and was consolidated with the Freemans' action on August 8, 2008 (Rec. Doc. 8).

Finally, the Bennetts filed a putative class action in the 32nd JDC alleging claims identical to those alleged in the Freeman complaint on their own behalf and on behalf of all other Louisiana borrowers who transacted mortgage loans with Quicken and Title Source.[6]  The putative class action was removed to the Eastern District on October 31, 2008 and eventually transferred to this Court for consolidation with the Freeman and Smith actions on November 25, 2008 (Rec. Doc. 9).

In connection with the present motions, Quicken and Title Source filed a motion to stay all class certification proceedings

---

the Smiths' HUD-1 Settlement Statement, the amount was actually a loan *discount* fee (see note 7 below).

[5]  As with the Freemans, the Smiths' HUD-1 Settlement Statement included a $300 fee for an appraisal by a local real estate appraiser, as well as an $80 fee with a reference to "TSI Appraisal Services" on the HUD-1 Settlement Statement.

[6] The Bennetts were charged a loan discount fee of $1,100, which was listed on line 802 of their HUD-1 Settlement Statement. Additionally, the Bennetts were charged the same $300 and $80 appraisal fees as the Freemans and Smiths.

and class-related discovery in the Bennett putative class action

pending the resolution of these dispositive motions (Rec. Doc.

26). The Court granted this motion by order of March 3, 2009

(Rec. Doc. 36).

## **THE PARTIES' ARGUMENTS**

### **A.    Quicken & Title Source's Arguments in Support**

Quicken and Title Source assert essentially the same

arguments in support of their motions for summary judgment on all

the Plaintiffs' claims.[7]

First, Quicken and Title Source argue that Plaintiffs'

claims under Section 8(b) of RESPA fail as a matter of law

because neither the loan discount nor the appraisal fees were

split or otherwise shared. The pertinent part of Section 8(b)

---

[7] While Quicken and Title Source filed separate memoranda
in support of their motions as to the Freeman/Bennett claims and
the Smith claims, as well as separate reply memoranda, the
arguments in each set of briefs are virtually identical, and in
large part verbatim, duplicates of each other. The only
difference between the two sets of briefing concerns the fact
that the Smiths were charged loan *origination* and *processing*
fees, whereas the Freemans and Bennetts were charges loan
*discount* fees.

However, Quicken and Title Source indicate that although the
HUD-1 Settlement Statement lists the fee paid by the Smiths as a
loan *origination* fee, the fee charged was in fact a loan *discount*
fee as evidenced by the disclosures provided to the Smiths prior
to the loan closing and as indicated on the Closing Instructions
to the closing agent. Accordingly, Quicken and Title Source take
the position that all the Plaintiffs' claims concern solely (1)
loan *discount* fees and (2) appraisal fees charged in connection
with their mortgage loans.

provides as follows:

> (b) Splitting charges
>
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).[8] Under the plain language of Section 8, Quicken and Title Source argue that only fee *splitting* is prohibited under RESPA- that is, situations in which a single charge is split between two parties, only one of which performed the services on which the charge was based. See <u>Williams v. Saxon Mortg. Servs., Inc.</u>, 2007 WL 1845642 (S.D. Ala. July 23, 2007); <u>Haug v. Bank of Am.</u>, 317 F.3d 832, 836 (8th Cir. 2003; <u>Boulware v. Crossland Mortg. Corp.</u>, 291 F.3d 261, 266 (4th Cir. 2002). Quicken and Title Source assert that summary judgment is proper because the loan discount fees charged to the Plaintiffs were paid to and retained solely by Quicken, and that the appraisal fees were paid to and retained solely by Title Source.

Relatedly, Quicken and Title Source cite numerous cases that have held that RESPA is not a rate-setting or price-control statute. See, e.g., <u>Morrisette v. Novastar Home Mortg., Inc.</u>, 484 F. Supp.2d 1227, 1229-1230 (S.D. Ala. 2007); <u>Santiago v. GMAC</u>

---

[8] Quicken and Title Source note that "Section 8" is the common reference to Section 12 U.S.C. §2607(b), because §2607(b) was the codification of Section 8 of the RESPA.

Mortg. Group, Inc., 417 F.3d 384, 387 (3d Cir. 2005); Kruse v.
Wells Fargo Home Mortg, Inc., 383 F.3d 49, 56 (2d Cir. 2004);
Krzalic v. Republic Title Co., 314 F.3d 875 (7th Cir. 2002),
cert. denied, 539 U.S. 958 (2003).  Quicken and Title Source
contend that these cases reaffirm their position that Section
8(b) is only applicable when the challenged fees are split or
shared.

Further, Quicken and Title Source contend that the
Plaintiffs have not alleged any specific contractual provisions
that were breached in connection with their loans.  First, Title
Source argues that the Plaintiffs have not alleged any facts
identifying any written or oral contract with Title Source.
Next, Quicken argues that the various notes and related mortgage
agreements are the only controlling contracts in this case.  As
such, the loan discount and appraisal fees were conditions of and
prerequisites to the loans received by the Plaintiffs.  Further,
Quicken contends that the Plaintiffs have not and cannot point
out any terms of the notes and mortgage agreements that Quicken
breached in connection with their loans.  Thus, Quicken argues
that summary judgment on the Plaintiffs' contract claims is
appropriate.

Additionally, Quicken and Title Source argue that the
Plaintiffs' claims based on the theory of "payment of a thing not
owed" are subject to summary dismissal.  Very simply, Quicken and

Title Source assert that both the loan discount and appraisal fees *were in fact owed* as conditions to and prerequisites of Quicken's extension of credit to the Plaintiffs, as well as in compensation for appraisal services rendered by Title Source.

Finally, Quicken and Title Source argue that the Louisiana Credit Agreement Statute ("LCAS"), La. Rev. Stat. Ann. §6:1122, bars the Plaintiffs' claims because those claims are not based on any alleged agreement *contained in the written note and mortgage documents*. See Jesco Constr. Corp. v. NationsBank Corp., 830 So. 2d 989, 990-92 (holding that "[t]he Louisiana Credit Agreement Statute precludes all actions for damages arising from oral credit agreements, regardless of the legal theory of recovery asserted," and, thus, the statute barred all of plaintiffs' claims, including those for breach of contract, detrimental reliance, negligent misrepresentation, unfair trade practices, breach of the duty of good faith and fair dealing, promissory and equitable estoppel, and breach of fiduciary duty); see also King v. Parish Nat'l Bank, 2004-0337 (La. 10/19/04); 885 So. 2d 540, 542-48. Quicken and Title Source assert that the Plaintiffs' claims are "exactly what the [CAS] is intended to prevent - a claim by a borrower disputing the terms of the loan that is not based on any written contractual provision."

As for the Plaintiffs' unjust enrichment claims, Quicken and Title Source argue that the Plaintiffs have failed to present

any evidence on two essential elements of an unjust enrichment cause of action. See Finova Capital Corp. v. IT Corp., 774 So.2d 1129, 1132 (La. App. 2 Cir. 12/15/00) (describing the five elements of an unjust enrichment claim: 1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available to the plaintiff). Specifically, Quicken contends that the Plaintiffs have not shown an absence of justification or cause for the discount fees, which were disclosed as a component of the pricing of the Plaintiffs' loans to allow comparisons of the costs of Quicken's loan and those of other lenders. Further, Title Source argues that the appraisal fee was charged in return for its efforts in locating and contacting appraisers, scheduling appointments, reviewing appraiser reports, etc. in connection with the Plaintiffs' mortgage loans from Quicken. See Eisenshtadt Affidavit, Rec. Doc. 29-7. As such, Quicken and Title Source argue that the loan documents provide the legal cause for payment of the fees, and thus an unjust enrichment claim is inappropriate as a matter of law. Furthermore, Quicken and Title Source point out that the Plaintiffs have other remedies at law, as evidenced by their RESPA, breach of contract, and "payment of a thing not owed"

claims in all three petitions at issue.

**B.  The Plaintiffs' Opposition**

The Plaintiffs have filed a joint opposition memorandum in response to Quicken and Title Source's motions.  First of all, the Plaintiffs point out that Quicken makes no argument that the Plaintiffs were *actually given a loan discount in return for the fees paid*.  The Plaintiffs suggest that this amounts to an admission that the Plaintiffs *did not receive a corresponding discount for the fee paid*.  Next, the Plaintiffs note that despite Quicken and Title Source's argument that courts have consistently interpreted claims under Section 8(b) as requiring some fee splitting arrangement, both the Second and Eleventh Circuits have held that a single service provider can violate Section 8(b).  See <u>Cohen v. JP Morgan Chase & Co., Inc.</u>, 498 F.3d 111, 113 (2nd Cir. 2007) (holding that single lender can violate Section 8(b) by imposing charge for which no services were provided based on language of statute and <u>Chevron</u> deference to HUD statement of policy); <u>Sosa v. Chase Manhattan Mortg. Corp.</u>, 348 F.3d 979, 981 (11th Cir. 2003) (holding that Section 8(b) can be violated by single settlement service provider).  The Plaintiffs also note that Quicken failed to mention that the fee-splitting issue under Section 8(b) is again before the Eleventh Circuit in a case in which Quicken is itself a named defendant. <u>Wooten et al v. Quicken Loans, Inc.</u>, Appeal No. 08-11245 (11th

Cir. 2008). Furthermore, the Plaintiffs note that HUD has issued a statement of policy reaffirming its "long standing" position that *any unearned fees* are improper under RESPA. Real Estate Settlement Procedures Act Statement of Policy 2001-1, 66 Fed. Reg. 53,053, 53,053 (Oct. 18, 2001) (hereinafter "the 2001 HUD SOP"). Based on the 2001 HUD SOP and the disagreement among the circuits regarding the requirement of a fee-splitting arrangement under Section 8(b), the Plaintiffs argue that Quicken's motion must be denied as it relates to Plaintiffs' claims based on the loan discount fees.

As for the Plaintiffs' claims regarding the appraisal fees, Plaintiffs contend that they have in fact alleged that the $80 appraisal services fee *may have been* split between Quicken and Title Source. The Plaintiffs have attached the Affiliated Business Arrangement Disclosures that they all received in connection with their loans from Quicken. See Rec. Docs. 38-12-14. These disclosures indicate that Quicken and Title Source are owned by the same company (Rock Holdings, Inc.) and that Quicken has a business relationship with Title Source that may provide a benefit to Quicken as a lender. In addition, the disclosures note that Quicken and Title Source operate at the same address in Livonia, Michigan. The Plaintiffs argue that these disclosures alone present an issue of material fact as to whether the appraisal fee was split between Quicken and Title Source that

precludes summary judgment.  See <u>Szezubelek v. Cendant Mortg.</u>
<u>Corp.</u>. 215 F.R.D. 107 (D.N.J. 2003) ("Whether the 'appraisal
management services' performed by [appraisal service company] was
bona fide, as Defendants argue, or a mere duplication of work,
the position urged by Plaintiffs, creates a genuine issue of
material fact making summary judgment inappropriate.").

Finally, the Plaintiffs distinguish the cases cited by
Quicken and Title Source for the proposition that RESPA is not a
price-control statute by noting that their claims do not assert
mere overcharges by Quicken and Title Source, but rather involve
claims for charges that do not correspond to any services
rendered.

The Smiths specifically address their opposition to Quicken
and Title Source's motion, given the fact that they were charged
a loan *origination* fee according to their HUD-1 Settlement
Statement, as opposed to a loan *discount* fee as was charged to
the other Plaintiffs.  First, the Smiths argue that if the amount
charged was a loan *origination* fee, which Quicken's website
describes as essentially an administrative fee for compiling ans
packaging loan documents, then the fee violated RESPA because no
work, or merely nominal or duplicative work, was performed in
connection with the loan *origination* and loan *processing* fees.
However, if the *origination* fee was in fact charged as a *discount*
fee - which fact the Smiths assert has only recently been

disclosed in a *footnote* to Quicken's memoranda in support of its present motion *nearly two years* after the Smiths' loan was closed – then Quicken has essentially admitted a per se RESPA violation because the HUD-1 Settlement Statement incorrectly identified the basis for the $5,107.44 fee.  Finally, even if the fee was a *discount* fee, the Smiths' argue that their case is essentially the same as the Freemans' and Bennetts' case in that the alleged discount fee did not result in any reduction in interest rate on their loan.  As such, regardless of whether the fee was an *origination* or *discount* fee, the Smiths argue that there is a material question of fact as to whether the fee was proper under Section 8(b) of the RESPA.

Based on the validity of their RESPA claims as outlined above, the Plaintiffs argue that their Louisiana contract claims are also viable.  Despite Quicken's argument that the Plaintiffs have not alleged the breach of any provisions of the governing note and mortgage documents, the Plaintiffs cite the "Loan Charges" section, which appears in both the notes and mortgages executed by the Plaintiffs.  This section provides in pertinent part that the "[l]ender may not charge fees that are expressly prohibited by . . . Applicable Law," which is defined as "all controlling applicable federal, state and local statutes, regulations . . . and administrative rules and orders . . . as well as all final, non-appealable judicial opinions."  See Rec.

13

Docs. 38-4, -6, & -8.  Based on this provision, the Plaintiffs

contend that because RESPA governed their notes and mortgages,

the violations of RESPA alleged in their complaints constituted a

breach of the "Loan Charges" section of those contracts.  As

such, the Plaintiffs assert that they have, in fact, alleged the

breach of express provisions of the notes and mortgages via their

allegations of RESPA violations.

Relatedly, the Plaintiffs reiterate that Quicken has

essentially admitted in its briefing that no reduction in

interest rates was provided in return for the discount fee

charged.  Further, the Plaintiffs contend that various documents

provided by Quicken reveal that no interest rate discount was

ever contemplated in return for the discount fees.  Specifically,

the Plaintiffs point out that line 802 of the Bennett and Freeman

HUD-1 Settlement Statements indicate that they paid discount

points, but the corresponding entry for "bought down rate" on the

Underwriting Analysis Reports for their loans was zero.  See Rec.

Docs. 38-9 & -10, -23 & -32.   The same is true for the Smiths'

HUD-1 Settlement Statement and analysis reports, assuming that

their origination fee was in fact a discount fee.  See Rec. Doc.

38-33.  Additionally, this same zero "bought down rate" appears

in the Uniform Underwriting and Transmittal Summaries that

Quicken completed in an apparent effort to sell the Plaintiffs

loans.  See Rec. Docs. 38-39 & -40. Further, the Plaintiffs argue

that they did not have the option to decline these discount fees. Rather, the Plaintiffs assert that the fees were charged as an unspecified and undisclosed component of the loan pricing, and/or were misrepresented or unlisted on their HUD-1 Statements, all in violation of RESPA. Either way, Plaintiffs argue that the discount fees violate RESPA, whether they were improper charges for a non-rendered discount service, or misrepresentations of proper pricing components in the guise of discount fees.

As for their contract claims against Title Source, Plaintiffs dispute Title Source's argument that they have not identified any binding contract between the Plaintiffs and Title Source. Rather, the Plaintiffs contend that the business relationship between Quicken and Title Source, as well as the fact that the Plaintiffs were *required* to use Title Source (d/b/a TSI Appraisal Services, Inc.) under the terms of the Quicken mortgage contract, imputes the contractual privity between the Plaintiffs and Quicken to Title Source.

The Plaintiffs also assert that they have established a claim for payment of a thing not owed under Louisiana law. Specifically, the Plaintiffs argue that the present record indicates that Quicken and Title Source charged loan discount, origination, processing, and/or appraisal fees for services that were never provided.

Additionally, the Plaintiffs assert that their unjust

enrichment claim should not be dismissed on summary judgment because no legal cause or justification exists for the fees charged by Quicken and Title Source and because unjust enrichment may eventually be their only basis for a claim. The Plaintiffs reiterate that Quicken has essentially admitted that the discount fees did not correspond to any actual interest rate discount, and has instead asserted that the discount fee was a built-in component of loan pricing. As noted earlier, the Plaintiffs argue that the discount fees were either unearned, or misrepresented on their HUD-1 Settlement Statements in violation of RESPA. Further, the Plaintiffs assert that loan discount points can *only* be reasonably construed under industry, HUD, and Quicken's own definitions as *optional* charges to reduce interest rates, and cannot be characterized as built-in, predetermined components of loan pricing. As such, Plaintiffs contend that their unjust enrichment claims should not be subject to summary judgment.

Finally, the Plaintiffs contend that the CAS does not preclude their claims because none of their claims are based on *oral* agreements, and the CAS applies solely to bar claims based on oral credit agreements. See <u>Jenco Constr. Corp v. NationsBank Corp</u>, 830 So. 2d 989, 990-92 ("[T]he [CAS] precludes all actions for damages arising from oral credit agreements.").

**C. Quicken and Title Source's Reply**

16

In reply, Quicken and Title Source have filed two
essentially identical briefs in further support of their motions
for summary judgment on the Freeman/Bennett and Smith claims. As
an initial matter, Quicken and Title Source argue that the
Plaintiffs have not presented any competent summary judgment
evidence to refute the assertions in the various affidavits
submitted in support of the present motions. Specifically,
Quicken argues that the Smiths have not presented any evidence,
other than their bare reference to their HUD-1 Settlement
Statement, which admittedly incorrectly refers to the loan
*discount* fee as a loan *origination* fee, to refute the affidavit
of Michael Lyon that the charge was in fact a discount fee.
Furthermore, Quicken and Title Source argue that none of the
Plaintiffs have refuted the Lyon Affidavit's assertion that the
loan discount fees were not split. While the Plaintiffs refer to
certain documents that *may* reveal a splitting of certain portions
of the discount fee,[9] Quicken and Title Source argue that this is
pure speculation. In addition, to the extent that the Plaintiffs
request additional discovery on this issue,[10] this request is

_____

[9] See Rec. Docs. 38-20, -24, -32, which reference a
"premium" that the Plaintiffs allege *may* refer to a portion of
the loan discount fee that *may* have been split with a third-party
transferee to whom their loans were sold immediately after
closing. See Rec. Doc. 38-1, Statement of Contested/Uncontested
Facts for Freeman and Bennett Plaintiffs, at ¶¶ 4 & 12.

[10] This request appears in paragraphs 4 and 12 of the
Plaintiffs' Statement of Uncontested Material Facts. See Rec.

17

improper under Rule 56(f) of the Federal Rules of Civil Procedure. Finally, Quicken argues that the Plaintiffs have failed to present any summary judgment evidence to refute the Lyon Affidavit's assertion that the discount fees were conditions of and prerequisites to their loans.

As for the appraisal fees, Title Source argues that the Plaintiffs have failed to present any summary judgment evidence to refute the affidavits submitted by Quicken and Title Source that the appraisal fees were not split. Further, Title Source contends that the Plaintiffs' reliance on the business relationship between Quicken and Title Source as a basis for its argument that the appraisal fees were split is not *evidence* to defeat summary judgment. Likewise, Title Source argues that the Plaintiffs have not presented any competent evidence to refute the Eisenshtadt Affidavit that appraisal services were actually rendered in return for the appraisal fee. Finally, Title Source disputes the Plaintiffs' argument for contractual privity with Title Source by way of their contract with Quicken. Title Source argues that, despite the Plaintiffs' unsupported speculations, it is a completely separate corporate entity from Quicken, and thus the Plaintiffs' strained privity of contract argument fails because it improperly attempts to pierce the corporate veil of Title Source.

---

Doc. 38-1, ¶¶ 4, 12.

Quicken also responds to the Plaintiffs' argument regarding the circuit split with respect to whether Section 8(b) of RESPA allows for claims in non-fee splitting situations. First, Quicken contends that the Plaintiffs misconstrue the loan discount fee (and the processing fee in the Smiths' case) as an unearned *settlement* service governed by RESPA. In this context, Quicken notes the Plaintiffs' reliance on <u>Wooten</u>, a case currently pending before the Eleventh Circuit in which Quicken is a defendant. The district court in <u>Wooten</u> dismissed the plaintiffs' claims under Section 8(b) of the RESPA based on loan discount fees charged by Quicken in connection with the plaintiffs' mortgage loans. 2008 WL 687379 (S.D. Ala. Mar. 10, 2008). The <u>Wooten</u> court found that the loan discount fees were not settlement services as defined by RESPA, and thus could not form the basis of a Section 8(b) violation. Thus, Quicken argues that the Plaintiffs' RESPA claims based on their loan discount fees fail under <u>Wooten</u> because loan discount fees are not fees for settlement service under RESPA.

Nonetheless, Quicken goes on to argue that even if loan discount fees are fees for settlement services subject to RESPA constraints, Plaintiffs are incorrect in their assertion that "discount points" may only be charged in connection with an actual interest rate reduction. To the contrary, Quicken points out that its website indicates that discount points are only

"generally" linked to interest rates, and further notes that the
Sixth Circuit has held that the term "loan discount" has several
differing definitions.  <u>Vandenbroeck v. Commopoint Mortg. Co.</u>,
210 F.3d 696, 702 (6th Cir. 2000) abrogated on other grounds by
<u>Bridge v. Phoenix Bond & Indem. Co.,</u> 128 S. Ct. 2131, 2137
(2008).

Finally, Quicken argues that Plaintiffs have misconstrued
the holdings of the <u>Sosa</u> and <u>Cohen</u> decisions.  Quicken contends
that courts have characterized claims under Section 8(b) for only
four types of settlement fees: (1) split fees; (2) markups; (3)
overcharges; and (4) undivided, unearned fees.  Quicken notes
that the Plaintiffs have only asserted claims that the loan
discount and appraisal fees were split, and/or that the loan
discount fees were unearned fees charged by and paid to Quicken.

Quicken argues that the Plaintiffs' reliance on the Eleventh
Circuit's opinion in <u>Sosa</u> is inappropriate because that case
concerned a *markup* claim, not a split or unearned fee claim.
<u>Sosa</u>, 348 F.3d at 983.  Further, Quicken notes that the <u>Sosa</u>
court affirmed the dismissal of the plaintiff's markup claims for
failure to allege that the lender did not render *any services at
all* corresponding with the alleged markup.  <u>Id</u>.  Thus, because
<u>Sosa</u> did not address the situation in which a lender charges an
entirely unearned fee, Quicken argues that <u>Sosa</u> is irrelevant on
the question of whether the "portion, split, or percentage"

language of Section 8(b) applies to an entirely unearned fee
retained solely by a lender.

Likewise, Quicken argues that the Plaintiffs' reliance on
the Second Circuit's decision in Cohen is misplaced.  First,
Quicken acknowledges that the Cohen decision did recognize a
Section 8(b) claim for allegedly unearned settlement service fees
retained by a lender.  However, Quicken asserts that the
Plaintiffs in this case cannot establish that Quicken did not
provide any services in connection with the loan discount fees
charged.  Furthermore, Quicken argues that the Cohen decision was
improperly decided and should not be followed.  Quicken notes
that the Cohen decision relied on the 2001 HUD SOP to determine
whether the "portion, split, or percentage" language of Section
8(b) allows for claims based on an allegedly unearned, unsplit
fee.  The Cohen court initially noted that the language of
Section 8(b), as well as its legislative history, contemplates
only claims based on fee splitting in the context of federally
related mortgage loan settlements.  498 F.3d at 122-23.
Nonetheless, the Cohen court found that the language of Section
8(b) was ambiguous and thus subject to HUD's agency
interpretation for clarification.  Id. at 120.  Quicken argues
that the Cohen court improperly deferred to the 2001 HUD SOP and
utilized unreliable principles of statutory interpretation to
conclude that Section 8(b) applies to unearned fees that are not

split.  Quicken argues that the Cohen court improperly applied
the principles of Chevron deference to an agency's interpretation
of a statute, because the 2001 HUD SOP created ambiguity in RESPA
where none existed.  Quicken further notes that several other
courts have rejected the interpretation of the 2001 HUD SOP and
held that Section 8(b) only allows claims in the context of fee
splitting.  See Santiago, 417 F.3d 387; Kruse, 383 F.3d at 57;
Krzalic, 314 F.3d at 881; Boulware v. Crossland Mortgage Corp.,
291 F.3d 267.

In the end, Quicken argues that the allegedly unearned fees
were simply an amount retained as loan-related fees and the
lender's income on the loan.  To the extent that the 2001 HUD SOP
attempts to expand RESPA's reach beyond the realm of fee
splitting protections and into the area of price regulation and
control, Quicken argues that the agency's interpretation is
inconsistent with the congressional purposes in enacting RESPA,
and thus should not be accorded any deference.  Further, Quicken
argues that Cohen is ultimately inapplicable because the
Plaintiffs cannot show that the discount fees were unearned.
Rather, as proven in the affidavits submitted by Quicken, the
discount fees were prerequisites to the Plaintiffs' receiving
their loans on the terms and at the specified rates that they
agreed to.  Additionally, these affidavits prove that the
discount fees were not split with any other party.  Finally,

Quicken argues that the discount fees can only be characterized, if they are at all inappropriate, as overcharges, which courts have consistently held are not actionable under Section 8(b). See Patino v. Lawyers Title Ins. Corp., 2007 WL 4687748, *3 (N.D. Tex. Jan. 11, 2007) (collecting cases). Thus, Plaintiffs' claims are inappropriate under any of the viable Section 8(b) grounds.

As a final note, Quicken argues that, to the extent the Plaintiffs base their claims on the alleged misrepresentation of the loan discount fees in the HUD-1 Settlement Statements, no private right of action exists under RESPA for an inaccurate settlement statement. Further, Quicken argues that because Plaintiffs' breach of contract claims regarding the discount fees are admittedly dependent on the validity of their RESPA claims, the breach of contract claims should be dismissed. Likewise, Title Source argues that because Plaintiffs' breach of contract claims regarding the appraisal fees are based solely on the theory that Quicken and Title Source are the same entity, those claims should also be dismissed. Finally, Quicken and Title Source argue that the Plaintiffs' "payment of a thing not owed" and unjust enrichment claims fail because the discount and appraisal fees *were* in fact owed and justified, either as prerequisites of the loan (e.g. the discount fee) or in return for appraisal services rendered. Furthermore, Quicken again argues that the CAS bars plaintiffs' claims on these grounds,

because Plaintiffs have failed to cite any *written* agreement in which Quicken agreed to lower their interest rate in return for the discount fees.

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Fed. R. Civ. Proc. 56(c)).  The moving party bears the initial burden of demonstrating to the court that there is an absence of genuine factual issues. *Id*. Once the moving party meets that burden, the non-moving party must go beyond the pleadings and designate facts showing that there is a genuine issue of material fact in dispute. *Id*.  "A factual dispute is 'genuine' where a reasonable jury could return a verdict for the non-moving party. If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." <u>Weber v. Roadway Exp., Inc.</u>, 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted). The non-moving party's burden "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory

allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. [The courts] resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *[The courts] do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."* <u>Little</u>, 37 F.3d 1075 (emphasis in original)(citations omitted).

**B.    Section 8(b) of RESPA and the Circuit Split**

The Plaintiffs have asserted claims under Section 8(b) of RESPA, which in turn form the foundation of their Louisiana state law contractual claims.  As such, the applicability vel non of Section 8(b) to the Plaintiffs' claims is the crux of this matter.

Section 8(b) of RESPA, entitled "Splitting Charges," provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. §2607(b).  The term "settlement service" includes:

> **any service provided in connection with a real estate settlement** including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property

surveys, the rendering of credit reports or appraisals,
pest and fungus inspections, services rendered by a real
estate agent or broker, the origination of a federally
related mortgage loan (including, but not limited to, the
taking of loan applications, loan processing, and the
underwriting and funding of loans), and the handling of
the processing, and closing or settlement

12 U.S.C.A. § 2602(3) (emphasis added).

When RESPA was first enacted in 1974, Congress specifically

indicated several problems that the act was intended to address

in the context of the real estate settlement process.  One of

these general problems was the "[a]busive and unreasonable

practices within the real estate settlement process that increase

settlement costs to home buyers without providing any real

benefits to them."  S. Rep. No. 93-866 as reprinted in 1974

U.S.C.C.A.N. 6546, 6547 (hereinafter "RESPA Senate Report").  To

solve this problem, Congress enacted Section 8(b)

to prohibit all kickback or referral fee arrangements
whereby any payment is made or 'thing of value' furnished
for the referral of real estate settlement business. The
section also prohibits a person or company that renders
a settlement service from giving or rebating any portion
of the charge to any other person except in return for
services actually performed.

Id.  In fact, the general statement of purpose for RESPA

indicates that the act was broadly intended to protect consumers

"from unnecessarily high settlement charges caused by certain

abusive practices that have developed in some areas of the

country."  12 U.S.C. §2607(a).  Despite the fact that Section

8(b) speaks primarily in terms of situations in which two or more

26

parties split or share a fee, whether unearned or only partially

earned,, several circuit courts have split on the issue of

whether Section 8(b) provides a claim in a situation where a

*single* settlement services provider retains unearned fees.  The

circuit split hinges on two pieces of language from Section 8(b):

(1) "[n]o person shall give and no person shall accept"; and (2)

"any portion, split, or percentage of any charge."  12 U.S.C.

§2607(b).

Complicating this circuit split is the 2001 HUD SOP, which

identifies four types of settlement service fees that, according

to the agency, give rise to Section 8(b) violations:

> (1) For **two or more** persons to **split** a fee for settlement
> services, any portion of which is unearned; or (2) for
> **one** settlement service provider to **mark-up** the cost of
> the services performed or goods provided by another
> settlement service provider without providing additional
> actual, necessary, and distinct services, goods, or
> facilities to justify the additional charge; or (3) for
> **one** settlement service provider to charge the consumer a
> fee where **no, nominal, or duplicative work** is done, or
> the fee is in **excess of the reasonable value of goods** or
> facilities provided or the services actually performed.

2001 HUD SOP 66 Fed. Reg. 53,053, 53,059 (emphasis added).  The

2001 HUD SOP goes on to state that "[i]n HUD's view, Section 8(b)

forbids the paying or accepting of any portion or percentage of a

settlement service– including up to 100% – that is unearned,

**whether the entire charge is divided or split among more than one**

**person or entity or is retained by a single person**."  Id.

(emphasis added).

The 2001 HUD SOP was issued in response to the Seventh Circuit's ruling in <u>Echevarria v. Chicago Title and Trust Co.</u>, 256 F.3d 623, 627 (7th Cir. 2001), which held that Section 8(b) claims must include an allegation of some splitting or sharing of the challenged charges notwithstanding the language of HUD's so-called "Regulation X" and other agency materials. See Id. at 53,052. Regulation X, codified at 24 C.F.R. §3500.14, provides in pertinent part that "[a] charge by **a person for which no or nominal services are performed** or for which duplicative fees are charged is an unearned fee and violates this [Section 8(b)]." (emphasis added). Thus, Regulation X suggests that a *single entity* can violate RESPA by charging for unperformed or underperformed settlement services. Notwithstanding this provision, the <u>Echevarria</u> court noted that the numerous other references to splitting or sharing of fees in Regulation X resulted in ambiguity in the regulation that would not justify overruling of prior Seventh Circuit precedent requiring an allegation of fee splitting for a Section 8(b) claim. <u>Echevarria</u>, 256 F.3d at 628. As such, "[a]bsent a formal commitment by HUD to an opposing position, [the <u>Echevarria</u> court] decline[d] to overrule [its] established RESPA § 8(b) case law." <u>Id</u>. at 630. The 2001 HUD SOP was HUD's attempt at a "formal commitment" to its position that even undivided fees are actionable under Section 8(b). It should be noted, however, that

28

even after the issuance of the 2001 HUD SOP and the continued effectiveness of Regulation X, several courts have determined that Section 8(b) is simply unambiguous on its face in requiring a split of the challenged fee, and thus the agency interpretations to the contrary are not entitled to any deference under <u>Chevron</u> principles. See, e.g., <u>Haug</u>, 317 F.3d at 839; <u>Boulware</u>, 291 F.3d at 267; <u>Krzalic</u>, 314 F.3d at 881.

As is apparent, the 2001 HUD SOP clearly contemplates the possibility of *unilateral* Section 8(b) violations by a settlement services provider, notwithstanding the statutory language suggesting that only multi-party sharing or splitting of fees is governed by Section 8(b). Regardless, courts have derived and analyzed in light of the 2001 HUD SOP the following four distinct categories of fees that may give rise to Section 8(b) violations:

**(1) <u>Unearned Split Fees</u>**- These are fees charged by a settlement service provider to a borrower for services performed by a third-party, which are then split between the service provider and the third-party. "The statutory language describes a situation in which A charges B (the borrower) a fee of some sort, collects it, and then either splits it with C or gives C a portion or percentage (other than 50 percent-the situation that the statutory term "split" most naturally describes) of it." <u>Krzalic v. Republic Title Co.</u>, 314 F.3d 875, 881 (7th Cir.2002). This

is the most basic and clearly contemplated type of prohibited fee scenario contemplated by Section 8(b). However, a claim for fee-splitting under Section 8(b) "must allege that the defendant shared an unearned fee with a third party to the real estate transaction." <u>Weizeorick v. ABN AMRO Mortg. Group, Inc.</u>, 337 F.3d 827, 831 (7th Cir. 2003). In other words, if the settlement service provider charges an excessive fee for third-party services, but simply retains the overage itself without sharing or splitting that overage with the third-party who rendered the services, no Section 8(b) violation has occurred. This latter scenario would simply constitute an overcharge (see below), and "[t]hose Circuits that have addressed the issue . . . universally hold that a bare allegation that a settlement service provider overcharged for its services is insufficient to make out a [Section] 8(b) violation." <u>Patino v. Lawyers Title Ins. Corp.</u>, 2007 WL 4687748, *3 (N.D. Tex. Jan. 11, 2007) (collecting cases). **The Plaintiffs' have alleged that Quicken and Title Source improperly split the appraisal services fee in this case**.

**(2) <u>Markups</u>** - Markups are fees charged to a borrower and retained by a settlement service provider for third-party services in excess of the value of those services. The Fourth, Seventh, and Eighth Circuits have held that the text

of section 8(b) clearly and unambiguously *does not prohibit* mark-ups based on the "no person shall give and no person shall receive" language of Section 8(b). See <u>Boulware</u>, 291 F.3d at 266 (4th Cir.); <u>Krzalic</u>, 314 F.3d at 881 (7th Cir.); <u>Haug</u>, 317 F.3d at 836. Specifically, these courts have held that Section 8(b) requires both a giver "and" a receiver, and thus applying Section 8(b) to mark-ups would have absurd results because the giver of the marked up fee - the borrower - would be equally culpable under the language of Section 8(b) as the acceptor of the marked up fee- the lender/settlement service provider. See, e.g., <u>Boulware</u>, 291 F.3d at 266.

However, the Second and Eleventh Circuits have held that mark-ups may be actionable under Section 8(b) against a sole lender/settlement service provider who retains the overage of a marked-up fee, *but only if* the plaintiff alleges that the lender/settlement service provider retained the overage without performing *any services whatsoever* to justify its retention. See <u>Kruse v. Wells Fargo Home Mortg., Inc.</u>, 383 F.3d 49, 55-57 (2d Cir. 2004); <u>Sosa</u>, 348 F.3d at 982-83 (11th Cir.). While the Fourth, Seventh, and Eighth Circuits foresaw absurd results if Section 8(b) were held *not* to require at least two actors, the <u>Sosa</u> court found just the opposite that "[e]xtending liability only if

31

there were both a culpable giver and acceptor of an unearned fee would lead to irrational results." <u>Sosa</u>, 348 F.3d at 983. Specifically, one provider could decide to give a kickback to another, who then refused to accept the kickback. <u>Id</u>. Under the other circuits' position, this would not result in a Section 8(b) violation because there was not both a giver and an acceptor. <u>Id</u>. The Plaintiffs in this case have not alleged any RESPA violations for marked up settlement service charges, but an understanding of the circuit-split on the issue of mark-ups under Section 8(b) is essential to the analysis in this case.

**(3) <u>Unearned, Undivided Fees</u>**[11]– These are fees charged to the borrower by a single lender/service provider for which no correlative service is performed. The only court to address this very specific type of fee in the context of Section 8(b) was the Second Circuit in <u>Cohen v. JP Morgan Chase & Co., Inc.</u>, which is discussed at length below. 498 F.3d 111 (2d Cir. 2007). The <u>Cohen</u> court, relying on the 2001 HUD SOP and the conclusion in <u>Kruse</u> that Section 8(b) does allow claims against single settlement service providers, held that "RESPA [Section] 8(b) . . . prohibit[s]

---

[11] This category is derived from the language in the 2001 HUD SOP indicating that a Section 8(b) violation will arise where "**one** settlement service provider [charges] the consumer a fee where **no, nominal, or duplicative work** is done."

'one service provider' from charging the consumer a fee for
which 'no . . . work is done." Id. at 126.  **The Plaintiffs
have alleged in this case that Quicken improperly retained
the loan discount fees and/or loan origination and
processing fees (viz. The Smiths) as unearned, undivided
fees**.

**(4) Overcharges** - These are charges "in excess of the
reasonable value" of the actual services provided that are
nonetheless retained by a single lender/settlement service
provider.  As noted above, every court to address Section
8(b) claims for overcharges has held that RESPA does not
allow such claims.  Specifically, RESPA is not intended to
function as a price-fixing statute that dictates the
"reasonable" value of loan settlement services.  Kingsberry
v. Chicago Title Ins. Co. 586 F. Supp. 2d 1242, 1247 (W.D.
Wash. 2008) ("Congress did not intend to use RESPA as a
means of fixing [the] rates for real estate settlement
charges[.]") (citations omitted).  In other words, "nothing
in [the statutory] language authorizes courts to divide a
'charge' into what they or some other person or entity deems
to be its 'reasonable' and 'unreasonable' components."
Kruse, 383 F.3d at 56.  Rather, "[w]hatever its size, such a
fee is 'for' the services rendered by the institution and
received by the borrower." Id.  The Plaintiffs in this case

have not asserted claims based on alleged overcharges.  See
Rec. Doc. 38, p. 11.

### i)    The Circuits that have Allowed Section 8(b) Claims for Undivided Fees

As noted above, the Second and Eleventh Circuits have held
that Section 8(b) does provide a cause of action when a single
settlement service provider retains unearned fees in connection
with a federally related mortgage loan.

### a)    <u>Cohen v. JP Morgan Chase & Co., Inc.</u> (2d Cir. 2007)

In <u>Cohen v. JP Morgan Chase & Co., Inc.</u>, the court held that
the plaintiff could maintain a Section 8(b) action based on a
$225 "post-closing" fee that was allegedly retained by the home
mortgage refinancing lender without any corresponding services
rendered. 498 F.3d 111, 113 (2d Cir. 2007).  The district court
in <u>Cohen</u> had dismissed the plaintiff's case for failure to state
a claim based on the lack of any allegation that the challenged
fee was split between the lender and any other party, as well as
the district court's finding that the fee at issues was analogous
to a non-actionable overcharge under the Second Circuit's
decision in <u>Kruse v. Wells Fargo Home Mortg., Inc.</u>, 383 F.3d 49,
55-57 (2d Cir. 2004).  The <u>Cohen</u> court's analysis proceeded under
the principles of <u>Chevron U.S.A. Inc. v. Natural Res. Defense
Council, Inc.</u>, 467 U.S. 837 (1984), and its progeny.

Initially, the <u>Cohen</u> court distinguished the fees in <u>Kruse</u>

from those at issue in <u>Cohen</u>. Specifically, the <u>Cohen</u> court noted that the <u>Kruse</u> decision only invalidated claims under Section 8(b) based on *overcharge* fees. <u>Id</u>. at 114. Thus, because the plaintiff's claims in <u>Cohen</u> were not based on an *overcharge* as in <u>Kruse</u>, but were rather based on *unearned, undivided* charges, the <u>Cohen</u> court held that the district court's reliance on <u>Kruse</u> in its dismissal of the plaintiff's claims was inappropriate. The <u>Cohen</u> court cited the 2001 HUD SOP as the basis for its distinction of the <u>Kruse</u> case, noting that the 2001 HUD SOP indicates that a claim based on an unearned, undivided fee will lie under Section 8(b). <u>Id</u>. (quoting the 2001 HUD SOP, 66 Fed. Reg. 53,053, 53,059). The <u>Cohen</u> court noted that while the <u>Kruse</u> case held that the 2001 HUD SOP was contrary to the plain meaning of Section 8(b) with respect to *overcharge* fees, it left open the question as to whether the agency's statement correctly interpreted Section 8(b) with respect to *unearned, undivided* fees. <u>Id</u>. at 115.

The <u>Cohen</u> court went on to note that while <u>Kruse</u> rejected the 2001 HUD SOP's position regarding *overcharge* fees, it also accepted another crucial aspect of the 2001 HUD SOP. Specifically, the <u>Kruse</u> court held that Section 8(b) was ambiguous with respect to its coverage of claims based on *marked-up* fees. <u>Id</u>. (citing <u>Kruse</u>, 383 F.3d at 58). Accordingly, the <u>Kruse</u> court accepted the 2001 HUD SOP's policy statement that

essentially allows for a claim based on settlement service fee markups, even when the markups are retained solely by the lender and are not split with third-party service providers whose service charges were marked up by the lender. See Kruse, 383 F.3d at 61-62. The Cohen court noted that this ruling in the Kruse decision was based on a finding of ambiguity in Section 8(b)'s use of the phrase "[n]o person shall give **and** no person shall accept," which the Fourth, Seventh, and Eighth Circuits had held to be unambiguous in requiring both a culpable giver *and* acceptor of a challenged fee. Cohen, 498 F.3d at 115 n.3. In other words, the Kruse court held contrary to those other circuits that a single service provider may be liable under Section 8(b) for marking up settlement service fees even when the markup is not shared with a third-party. In addition, the Cohen court noted that Kruse relied on the Eleventh Circuit's ruling in Sosa to support its opinion that a Section 8(b) claim may lie against a sole service provider who charges and retains a marked up fee. Id. Thus, despite the difference in the types of fees addressed by the Kruse court, the Cohen court followed the Kruse court's precedent that Section 8(b) *can* apply to individual settlement service providers, as indicated in the 2001 HUD SOP, due to the ambiguity of the statute.

Based on this precedent that a single service provider can be liable for Section 8(b) violations, the Cohen court addressed

whether a single service provider could be liable under Section 8(b) for charging fees for which no services were provided. Initially, the Cohen court found that the "any portion, split, or percentage of any charge" language of Section 8(b) is ambiguous as to whether its restrictions apply to undivided, unearned fees. Id. at 117. The court recognized that "[b]ecause the words 'portion,' 'split,' and 'percentage' are commonly understood to reference things that have been divided and that are less than a whole, their use together in RESPA § 8(b) could plausibly be understood to signal a legislative intent to prohibit unearned fees *only when reflected in divided charges*." Id. at 117. However, the Cohen court went on to note that the *context* of Section 8(b) supports a conclusion that even undivided, unearned fees should be regulated under the statute. First, the court noted that use of the word "any" generally indicates Congress's intent that the statute sweep broadly. Id. at 117-118. Next, the Cohen court noted that while the Fourth, Seventh, and Eighth Circuits have all held that division of the challenged fee is necessary for a Section 8(b) claim, those holdings were in the context of the phrase "[n]o person shall give and no person shall accept", which those courts held to require at least two actors for a Section 8(b) violation. Id. at 119. The Second Circuit in Kruse, however, rejected this requirement of a culpable giver and acceptor, which itself contemplates division of the challenged

charge. Id. In the end, the Cohen court held that "Congress's serial reference to '*any* portion, split, or percentage of any charge' in §8(b) can plausibly be construed to demonstrate a legislative intent to sweep broadly, prohibiting all unearned fees, however structured." Id. at 120 (emphasis in original).

Next, the Cohen court considered the structure, purpose, and history of Section 8(b) in an attempt to clarify its ambiguity. Initially, as a matter of structure, the court noted that Section 8 is generally entitled "Prohibition against kickbacks and unearned fees," while Section 8(b) is specifically entitled "Splitting charges." Id. at 121. Despite the fact that these titles suggest a division requirement, the Cohen court held that the structure of Section 8 does not clarify the ambiguity in the phrase "any portion, split, or percentage of any charge." Id. In terms of the purpose of Section 8, the Cohen court noted that the purpose statement of RESPA does not specifically address undivided fees, and in fact only addresses "kickbacks or referral fees." Id. at 122 (citing 12 U.S.C. §2601(b)). Nonetheless, the court also pointed out that the purpose statement also provides an overall goal of protecting consumers from "abusive practices" that result in "unnecessarily high settlement charges," which further underlines the ambiguity in Section 8(b) on the issue of undivided fees. Id. (citing 12 U.S.C. §2601(a)). Finally, the Cohen court pointed out that the RESPA Senate Report, which it

38

described as the "most authoritative[]" statement of the act's legislative history, refers exclusively to examples of divided fee scenarios, but nonetheless does not indicate that Congress *conclusively or directly considered and rejected* a provision prohibiting claims for undivided fees. Id.

As a result of the remaining ambiguity of the statute after these initial <u>Chevron</u> inquiries, and given Congress's grant of "broad authority" to HUD to administer RESPA, the <u>Cohen</u> court moved on to the second <u>Chevron</u> step of considering whether the 2001 HUD SOP reasonably construes Section 8(b) to apply to undivided, unearned fees. <u>Id</u>. at 124. First, the court noted that HUD has, since the first 1976 edition of its consumer information booklet, consistently indicated that it is illegal "to charge or accept a fee or part of a fee where no service has actually been performed." <u>Id</u>. at 125 (citations omitted). As such, and based on its finding that the 2001 HUD SOP is reasonable in its conclusion that an unearned, undivided fee is actionable under Section 8(b), the <u>Cohen</u> court reversed the Rule 12(b)(6) dismissal of the plaintiff's claims under RESPA, as well as her state law claims, which were contingent on the alleged RESPA violations. <u>Id</u>.

**b)** <u>**Sosa v. Chase Manhattan Mortgage Corp.**</u> **(11th Cir. 2003)**

The Eleventh Circuit in <u>Sosa</u> addressed the district court's dismissal under Rule 12(b)(6) of the plaintiff's Section 8(b)

claims based on a $50 fee for courier services.  348 F.3d at 981.

The plaintiff alleged that the defendant mortgage lender paid

part of the $50 fee to a courier services for work performed, but

retained the rest of the fee although it did not make any

deliveries itself.  Id.  The Sosa court initially considered the

history of Section 8, noting that the RESPA Senate Report

indicated an intent to curtail kickbacks as well as fees for

which no services were provided.  Id.  The court then discussed

the structure of Section 8, noting that Section 8(a), which

prohibits referral fee arrangements, and 8(b), which "attempts to

close any loopholes" by precluding fees except for services

actually performed, combine to "create a broad prohibition

against fees that serve solely to increase the cost of

settlements to consumers." Id. at 982.  Based on these factors,

the Sosa court rejected the district court's conclusion that

Section 8(b) can only be violated when two culpable parties split

an unearned fee, rejecting the Fourth and Seventh Circuit's

holdings in Boulware and Krzalic.  Id. at 982. The Sosa court

held that the phrase "[n]o person shall give and no person shall

receive" allows for either a giver or a receiver of unearned

settlement service fees to be liable under Section 8(b).  Id.

Further, the court rejected the conclusion that allowing an

action against a single entity under Section 8(b) would cause the

absurd result that a borrower could be liable under the act.  The

40

_Sosa_ court held that a borrower/consumer will _always_, absent some connivance, pay settlement service fees with the intent that those fees actually be used for the service charged. Id. In this case, although the acceptor might be liable for accepting an unearned fee, the borrower/giver of the fee would not be liable because he or she would not have given the fee for unearned services. Id. Finally, as noted above, the _Sosa_ court found just the opposite – that requiring two culpable parties for a Section 8(b) violation could produce the absurd result that if a service provider offered a prohibited unearned fee, but the offeree refused to accept the fee, then the service provider could not be liable because there were not two culpable parties. Id.

However, despite its disagreement with the district court's conclusion as to whether a single party can violate Section 8(b), the _Sosa_ court nonetheless upheld the dismissal of the plaintiff's claims. "What [was] missing [was] an allegation that the portion of the charge that [the lender] retained was accepted 'other than for services actually performed,' i.e., that [the lender] performed _no services_ that would justify its retention of a portion of the fee." Id. at 983. In other words, because the lender had "benefitted the [plaintiff] by arranging for third party contractors to perform the deliveries," which in itself constituted some service rendered, its retention of the extra

portion of the $50 fee was not entirely unearned.  <u>Id</u>. at 984.

        **c)**     **<u>Santiago v.GMAC Mortgage Grp.</u> (3rd Cir. 2005)**

Finally, the Third Circuit in <u>Santiago</u> addressed the
plaintiff's claims under Section 8(b) based on alleged mark-ups
of tax services and flood certification fees charged by the
defendant lender for third-party services, as well as an alleged
overcharge for a "funding fee."  417 F.3d at 385.  The district
court dismissed the plaintiff's claims under Rule 12(b)(6),
finding that Section 8(b) only applies to kickbacks and
referrals.  <u>Id</u>.  The <u>Santiago</u> court upheld the dismissal of the
overcharge claims, finding that Section 8(b) plainly does not
provide a cause of action for overcharges.  <u>Id</u>. at 387.

However, as to the mark-up claims, the <u>Santiago</u> court held
that the language "[n]o person shall give and no person shall
receive" is ambiguous in terms of whether an undivided, unearned
mark-up may be actionable under Section 8(b).  <u>Id</u>. at 388-89.
However, the court found that the context of Section 8(b)
supports an action against a service provider who unilaterally
marks up the costs of third-party services and retains the extra
portion of the fee.  <u>Id</u>. at 389.  Specifically, the <u>Santiago</u>
court noted that the title of Section 8 as a whole is
"Prohibitions against kickbacks and unearned fees"; the title of
Section 8(a), which prohibits acceptance of "any fee, kickback,
or thing of value," is "Business referrals"; and the title of

Section 8(b), which prohibits the acceptance of "any portion, split, or percentage of any charge," is "Splitting charges." Id. (citing Section 8). Given this context, the Santiago court held that if Section 8(b) were applied only to multiple party kickback scenarios, that would render Section 8(a), which specifically applies to kickbacks, redundant. Id. As such, the court held that "a reading of Section 8(b) that allows a cause of action for [unilateral] markups is consistent with the title of Section 8 that prohibits both kickbacks and unearned fees." Id. Accordingly, the Santiago court remanded the case for further proceedings to determine whether the alleged markups charged by the lender defendants were truly nominal, or whether they were charged for some additional services performed by the lenders. Id.

### ii) The Circuits that have not Allowed Claims for Undivided Fees

The Court's discussion thus far has already indicated the position and to some extent the analysis of those circuit courts that have – unlike the Cohen, Sosa, and Santiago courts – *rejected* the applicability of Section 8(b) to claims based on undivided fees. However, a brief review of these cases and their holdings will more clearly delineate the circuit split as it exists after the 2001 HUD SOP.

The first appellate court to conclude that Section 8(b) violations require some form of divided or shared fee was the

Fourth Circuit in <u>Boulware</u>. The plaintiff in <u>Boulware</u> alleged that she was charged $65 for a credit report during her loan closing, but that the credit report only cost $15 or less to obtain, and the defendant lender retained the extra $50 without performing any additional services (i.e. a mark-up fee).[12] 291 F.3d at 264. The district court dismissed her claims and putative class claims under Rule 12(b)(6), as well as the Seventh Circuit's decision in <u>Echevarria</u>. <u>Id</u>. The <u>Boulware</u> court characterized the plaintiffs' action as "claims that [Section] 8(b) . . . is a broad price control statute prohibiting any overcharge for credit reports." <u>Id</u>. at 263. However, the <u>Boulware</u> court held that "[t]he plain language of [Section] 8(b) makes clear that it does not apply to every overcharge for a real estate settlement service and . . . is not a broad price-control provision." <u>Id</u>. at 265. Further, the court held that "[b]y using the language 'portion, split, or percentage,' Congress was clearly aiming at a sharing arrangement rather than a unilateral overcharge." <u>Id</u>. Thus, "the presence of an overcharge alone, without any portion of the overcharge being kicked back to or split with a third party, is not sufficient to fall within the

---

[12] Despite the fact that the <u>Boulware</u> court spoke in terms of "overcharge" claims, the plaintiff's allegations were actually for an improper mark-up as described above, because the plaintiff did not allege that the credit reporting agency or any other third party received any payment from the defendant lender beyond that owed for the services actually performed. <u>Id</u>.

purview of [Section] 8(b)." <u>Id</u>. at n.3.  Finally, the <u>Boulware</u>
court refused to give any deference to the 2001 HUD SOP or
Regulation X in the face of the unambiguous language of the
statute.  <u>Id</u>. at 267.  Likewise, and in response to the
plaintiffs' legislative history/intent argument, the <u>Boulware</u>
court held that "[n]othing in §2601 [the RESPA statement of
purpose] indicates that [Section] 8 was intended to eliminate all
settlement service overcharges," and that instead RESPA was meant
only to "prohibit all kickback and referral fee arrangements."
<u>Id</u>. at 268.

     The next circuit opinion to address the applicability of
Section 8(b) to undivided fees was the Seventh Circuit's decision
in <u>Krzalic</u>, which was authored by Judge Posner.  The putative
class plaintiffs in <u>Krzalic</u> alleged that the closing agent in the
purchase of their homes charged a $50 fee for mortgage recording,
but only paid the county record $36, with the extra $14 retained
as a charge other than for services actually performed in
violation of Section 8(b) (i.e. mark-up fees).  314 F.3d at 877.
Initially, the <u>Krzalic</u> court cited <u>Boulware</u> as well as its own
earlier decision in <u>Echevarria</u>, which held that a Section 8(b)
violation requires some kickback or two-party fee splitting
scheme, and noted that the plaintiffs had not alleged any such
divided fee.  <u>Id</u>.  Next, the <u>Krzalic</u> court noted that in response
to <u>Echevarria</u>, HUD issued the 2001 HUD SOP, which purportedly

clarified the agency's previously ambiguous position, disagreed with the Echevarria court's conclusion, and expressly provided HUD's view that Section 8(b) violations are not "limited to situations where at least two persons split or share an unearned fee." Id. (citing the 2001 HUD SOP). Despite the clarification in the 2001 HUD SOP, the Krzalic court reaffirmed its holding in Echevarria that the plain language of Section 8(b) requires that the challenged fee be split by at least two parties. Id. at 879-880. As such, the Krzalic court refused to give any deference to the 2001 HUD SOP, both because the agency statement was unreasonable in the face of Section 8(b)'s unambiguous language and because the 2001 HUD SOP was not the result of any formal notice and comment rulemaking sufficient to trigger Chevron deference.

Finally, the Eighth Circuit next took up the issue in Hauq, which involved putative class claims under Section 8(b) based on settlement service charges for credit reports and other loan services that exceeded the defendant lenders' actual costs for those services. 317 F.3d at 834. The district court denied the defendants' motion to dismiss for failure to state a claim, and the defendants took an interlocutory appeal. Id. at 835. The Hauq court held that Section 8(b) "is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute." Id. at 836

(citing <u>Boulware</u> and <u>Echevarria</u>).  Also, the <u>Haug</u> court held that "[b]ecause the plain language of Section 8(b) unambiguously requires the giving or receiving of an unearned portion of a settlement fee," the 2001 HUD SOP should not be afforded any deference with respect to its conclusions contrary to the plain language of the statute.  <u>Id</u>. at 838.

### iii) The Fifth Circuit's Lone Statement on Section 8(b)

The Fifth Circuit has not directly addressed the circuit-split outlined above, but has hinted at a position on the issue. In <u>Knighton v. Merscorp Inc.</u>, the Fifth Circuit addressed the district court's dismissal of an MDL based on the plaintiffs' claims that a small fee charged by mortgage lenders, which was then paid to the defendants, violated Section 8(b).  304 Fed. Appx. 285, 286 (5th Cir. 2008).  The defendants in <u>Knighton</u> acted as the permanent mortgagee of record in public land records for multiple loans, which allowed for rights to the various loans to be bought and sold without requiring changes to the land records. <u>Id</u>.  Amongst other RESPA claims, the plaintiffs alleged that the fee paid to the defendants violated Section 8(b) because the services the defendant company performed as permanent mortgagee in exchange for the fee did not benefit the borrower.  <u>Id</u>. at 288.  The Fifth Circuit considered three separate questions in determining whether dismissal of the plaintiffs' Section 8(b) claims was proper: "(1) was the . . . fee a settlement service;

47

(2) **does Section 2607(b) apply to undivided fees**; and (3) were services actually performed?" <u>Id</u>. (emphasis added).  The <u>Knighton</u> court held with respect to the first question that "what [Section 8(b)] prohibits is charging a fee for a settlement service that is not performed." <u>Id</u>.  With respect to the third question, the court held that "[t]he statute clearly states that the charges cannot be paid other than for services actually performed, but nothing in it implies that the services must benefit the borrower." <u>Id</u>.  Further, the Fifth Circuit argued that the fee at issue could be construed to benefit borrowers in that the fee facilitates securitization of mortgage loans, which in turn allows more borrowers to obtain such loans. <u>Id</u>. Finally, as to the second question, which constitutes the heart of the circuit split, the Fifth Circuit noted that "[t]he statutory language refers to a split fee or the payment of a percentage of a fee [but] **does not mention undivided fees**." <u>Id</u>.  Nonetheless, the <u>Knighton</u> court recognized that the <u>Cohen</u> court had approved application of Section 8(b) to undivided fees, but in the end refused to analyze the issue on its own.  <u>Id</u>.  Rather, "because the fee was paid in exchange for a service that was actually performed," the <u>Knighton</u> court upheld the dismissal.

Furthermore, district courts in the Fifth Circuit have found the reasoning of <u>Boulware</u>, <u>Haug</u>, and <u>Echevarria</u> persuasive on the issue of whether Section 8(b) requires an allegation of division

48

of the challenged fee.  See, e.g., <u>Patino v. Lawyers Title Ins.</u>
<u>Corp.</u>,  2007 WL 4687748, *5 (N.D. Tex. Jan. 11, 2007); <u>Mims v.</u>
<u>Stewart Title Guar. Co.</u>,521 F. Supp. 2d 568, 572 (N.D. Tex.
2007).  Nonetheless, these courts allowed plaintiffs' claims to
proceed beyond Rule 12(b)(6) dismissal due to allegations that
the challenged fees had in fact been split.

### iv)  Pending Appeal Before the 11th Circuit in <u>Wooten v.</u> <u>Quicken Loans, Inc.</u>

As noted by the parties, the Southern District of Alabama
addressed claims identical to those alleged against Quicken in
this case with respect to loan discount fees.  Specifically, the
plaintiffs in <u>Wooten</u> alleged that they entered into loans for
which they paid discount fees, or points, without any
corresponding discount in their interest rates.  2008 WL 687379
at * 1.  In <u>Wooten</u>, Quicken filed a motion dismiss under Rule
12(b)(6) based on its arguments that (1) the plaintiffs did not
allege any split of the discount fee and (2) loan discount fees
are not "settlement services" within the ambit of Section 8(b).
<u>Id</u>.  The plaintiffs argued that the Eleventh Circuit's ruling in
<u>Sosa</u> held that a single party can violate Section 8(b).  <u>Id</u>.
Further, the plaintiffs argued that the definition of settlement
services under RESPA was amended in 1992 to include loan discount
fees.  <u>Id</u>. at *5.

The <u>Wooten</u> court first addressed the issue of whether a
single party can violate Section 8(b).  The court held that "<u>Sosa</u>

[does not stand] for the proposition that an unsplit fee, like the one involved . . . in the instant case, can violate section 8(b) of RESPA." Id. at *3. First, the Wooten court noted that Section 8(b) is entitled "Splitting charges," which "clearly contemplates two actors and the division of a fee and does not regulate the amount that one provider may charge." Id. (citing Boulware and Hauq). Furthermore, the court distinguished the fees at issue in Sosa from the discount fees charged by Quicken. Specifically, the Wooten court noted that Sosa involved an alleged fee mark-up, in which the lender marked up the charge for third-party services and retained the mark-up itself. Id. at *2. While the Wooten court recognized the statement in Sosa that a single service provider can violate Section 8(b) by marking up third-party fees, the court also noted that a mark-up scenario *still requires a two-party splitting of fees*, even if only one party (i.e. the lender) is reaping any excess benefit from the mark-up. Id. In contrast, the plaintiffs' claims in Wooten alleged merely that Quicken and Quicken alone charged an improper fee without rendering any services. Id. at 4. The Wooten court noted the array of cases that have held that "RESPA is not a price-control act and does not forbid lenders from receiving excessive charges for the services they provide." Id. at 3 (citations omitted). As such, the Wooten court held that the plaintiffs' claims that they allegedly received their loans at a

higher rate than they should have was not actionable under Section 8(b). <u>Id</u>. at 4. Finally, the <u>Wooten</u> court rejected the plaintiffs' arguments under the 2001 HUD SOP, noting that "[t]his policy statement has been rejected by a number of courts as contrary to the plain language of Section 8(b)." <u>Id</u>. (citing <u>Santiago</u>, <u>Kruse</u>, <u>Krzalic</u>, and <u>Boulware</u>).

Furthermore, even if an unsplit fee were actionable, the <u>Wooten</u> court held that the loan discount fees at the basis of the plaintiffs' claims do not constitute "settlement services" under RESPA. <u>Id</u>. Quoting the RESPA definition of "settlement services," the <u>Wooten</u> court noted that every example in the definition refers to *actual services* as opposed to an *agreement* to lower interest rates. <u>Id</u>. The <u>Wooten</u> court also rejected the plaintiffs' argument that the 1992 RESPA amendments, which were enacted in part to expressly include loan origination as a settlement services under RESPA, also cover loan discount fees. <u>Id</u>. at *5. The court found that the inclusion of loan origination as a settlement service did not change the definition's requirement that only *service*, not the substantive terms of a loan such as interest rate, are governed by RESPA. <u>Id</u>.

As of this date, the <u>Wooten</u> decision remains pending on appeal to the Eleventh Circuit in <u>Wooten et al v. Quicken Loans, Inc.</u>, Appeal no. 08-11245 (11th Cir. 2008).

### C.    The Plaintiffs' Claims

As an initial matter, the Plaintiffs in this case allege RESPA violations with respect to two, possibly three, types of fees charged by Quicken and/or Title Source:

(1) **unearned, undivided loan discount fees** charged by Quicken, for which the Plaintiffs allege they received no corresponding services or value;

(2) **split appraisal fees**, which the Plaintiffs allege were charged by and improperly split between Quicken and Title Source;

(3) with respect to the Smiths, **unearned, undivided loan origination** and **loan processing fees**, which the Smiths allege were charged by Quicken for no, nominal, or duplicative work.  The Smiths base their claims on the description of the challenged fees in their HUD-1 Settlement Statement.  However, as noted earlier, Quicken has presented affidavit testimony that the origination and processing fees listed in the Smiths statement were in fact loan discount fees.  Either way, the Smiths allege that the fees were unearned, undivided fees charged in violation of Section 8(b).

Furthermore, and as noted earlier, the Plaintiffs' state law contract claims are contingent on the validity of their RESPA claims.  As such, the Court will address the propriety of summary judgment as to the Plaintiffs' RESPA claims for each of the three alleged fee types.

### (1)   Loan Discount Fee Claims

The Plaintiffs' claims based on the allegedly unearned, undivided loan discount fees charged by Quicken come in the teeth of the circuit split discussed above.  As an initial matter, the Court finds the circuit decisions that have held that Section

8(b) only applies to divided fees to be correct in terms of the plain language of the statute. In other words, the Court agrees that the plain language of Section 8(b) of RESPA *requires* an allegation that the challenged fees have been split in some fashion. Given this finding, the contrary provisions of Regulation X and the 2001 HUD SOP are not entitled to any deference under the principles of <u>Chevron</u>. <u>Chevron</u> requires that a court must determine "whether Congress has directly spoken to the precise question at issue," for if congressional intent is clear, both "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984). As a result, this Court finds the reasoning of the circuit decisions that have *rejected* claims for unearned and/or undivided fees - <u>Boulware</u>, <u>Echevarria</u>, <u>Krzalic</u>, and <u>Hauq</u> - to be the more well-reasoned decisions on this issue, and agrees with the other district courts in this circuit - <u>Patino</u> and <u>Mims</u> - that have sided with those decisions in denying claims under Section 8(b) based on undivided fees. Additionally, the Court takes counsel from the Fifth Circuit's acknowledgment in <u>Knighton</u> that "the statutory language [of Section 8(b)] refers to a split fee or the payment of a percentage of a fee **[but] does not mention undivided fees**." <u>Knighton</u>, 304 Fed. Appx. at 288. Accordingly, the Plaintiffs claims based on the loan discount

53

fees charged by Quicken should be dismissed on summary judgment because Quicken is entitled to judgment as a matter of law.

## (2) Split Appraisal Fees

The Plaintiffs' claims based on the appraisal fees allegedly split between Quicken and Title Source are not, at least on their face, implicated in the circuit split.[13]  Rather, these claims simply allege that Quicken charged an appraisal fee for services provided by Title Source, in excess of the actual costs of those services, which it then split with Title Source.  However, both Quicken and Title Source have presented affidavits in support of their motion for summary judgement that plainly show that the appraisal fees were not split between Quicken and Title Source. In response to this unequivocal summary judgment evidence, the Plaintiffs have simply presented evidence of a business relationship between Quicken and Title Source that they argue

_____

[13]  To the extent that the Plaintiffs' complaint may be read to include a claim that Title Source unilaterally retained the appraisal fee without providing any services in return for that fee, the Plaintiffs have not addressed that claim in response to Quicken and Title Source's motions for summary judgment, and thus the claim has apparently been abandoned.  Regardless, the Eisenshtadt Affidavit unequivocally proves that Title Source did in fact render some appraisal services in return for the fee charged, and the Plaintiffs have not refuted that fact.  As such, to the extent that Plaintiffs have alleged that the appraisal fee was an unearned, undivided fee retained by Title Source, that claim has either been abandoned, or should be dismissed on summary judgment.  "Crudely put, Section 8(b) addresses the practice of being paid _at all_ for doing _nothing_, not the practice of being paid _too much_ for doing _something_."  Morrisette v. NovaStar Home Mortg., Inc., 484 F. Supp. 2d 1227, 1230 (S.D. Ala. 2007).

somehow *suggests* the appraisal fees were in fact split. This merely oblique suggestion of a possible business relationship between Quicken and Title Source does not refute the direct summary judgment evidence that indicates the appraisal fees were not shared between Quicken and Title Source.

Finally, to the extent the Plaintiffs seek additional time to conduct discovery on the issue of whether the appraisal fee may have been split between Quicken and Title Source, the request is governed by Rule 56(f) of the Federal Rules of Civil Procedure. This rule provides that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition," the court may deny the motion, continue the motion to allow further discovery, or issue any other just order. Fed. R. Civ. Proc. 56(f). While the Plaintiffs have requested additional discovery in their Statement of Material Facts, they have not done so by affidavit in accordance with Rule 56(f). Further, the request in the Statement of Contested facts does not "demonstrate how postponement and additional discovery will allow [them] to defeat summary judgment," especially in light of the unequivocal affidavit testimony on this issue submitted by Quicken and Title Source. See <u>Stearns Airport Equip. Co. v. FMC Corp.</u>, 1710 F.3d 518, 534-35 (5th Cir. 1999). As such, the Plaintiffs' request for additional discovery should be denied, and Quicken and Title

Source's motion for summary judgment should be granted as to the Plaintiffs' claims based on the appraisal fees.

### (3)  The Smiths' Origination/Processing Fees

Whether the fees charged to the Smiths were loan origination and processing fees, or were in fact loan discount fees, may in and of itself constitute a question of fact.[14]  Nonetheless, and regardless of whether the fee was a loan origination and processing fee  or a discount fee as with the Freemans and Bennetts, the Smiths' claim is based on an allegation that the fee was an unearned, undivided fee charged by Quicken in violation of Section 8(b).  Thus, whether the fee was an origination and processing fee or a discount fee, the same analysis discussed above with respect to the Plaintiffs' claims regarding unearned, undivided loan discount fees charged by Quicken applies, and Quicken's motion for summary judgment On these claims should be granted.

### D.  The Plaintiffs' Louisiana Contract Claims

In light of the discussion above, and given the invalidity of the Plaintiffs' Section 8(b) claims, Plaintiffs' claims against Quicken and Title Source for breach of contract fail along with their RESPA claims, and thus Quicken and Title

---

[14]  Specifically, the Smiths' HUD-1 Settlement Statement lists the $5,107.44 fee that they are currently challenging as a loan origination fee.  However, in support of its summary judgment motion, Quicken presents an affidavit indicating that the $5,107.44 fee was in fact a loan discount fee.

Source's motions regarding those claims should be granted.

**E.    The Plaintiffs' Claims for Payment of a Thing Not Owed and Unjust Enrichment**

As for the Plaintiffs' quasi-contractual claims under Louisiana law, the Court again finds that the failure of Plaintiffs' claims under Section 8(b) of RESPA requires the dismissal of any Louisiana claims for unjust enrichment and payment of a thing not owed.  Accordingly,

**IT IS ORDERED** that Quicken and Title Source's **Motions for Summary Judgment (Rec. Docs. 29 & 31)** are hereby **GRANTED.**

**IT IS FURTHER ORDERED** in light of the above ruling that Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this  7th  day of    August    , 2009.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE